## WALTON N. MOORE DRY GOODS CO., Inc., v. COMMERCIAL INDUSTRIAL CO., Limited.

(Circuit Court of Appeals, Ninth Circuit. June 19, 1922.)

No. 3848.

1. **Courts ⬦274—Foreign corporation, not doing business in district, not subject to jurisdiction of federal court.**

   To support the jurisdiction of a federal court to render personal judgment against a foreign corporation, it is essential, in the absence of consent, that the corporation was at the time of service doing business within the district, and service must be made on some agent so far representing the corporation that he may be held in law an agent to receive process on behalf of his principal.

2. **Courts ⬦274—What constitutes "doing business" in district by foreign corporation.**

   What constitutes "doing business," which will subject a foreign corporation to service in a district, depends on the facts in each particular case; but it must be something more substantial than a single or isolated

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

transaction, such as attempting to effect a settlement connected with a contract made in the jurisdiction of its domicile and principal place of business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

3. Courts ⊗═274—Foreign corporation held not doing business in district.

A foreign corporation, having no office or place of business in a district and no agent representing it there, *held* not subject to the jurisdiction of a federal court therein by service on its representatives temporarily in the district with authority to settle a claim against it arising out of a contract made in its home country.

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action at law by the Walton N. Moore Dry Goods Company, Incorporated, against the Commercial Industrial Company, Limited. Judgment for defendant (276 Fed. 590), and plaintiff brings error. Affirmed.

Gregory & Goodell, of San Francisco, Cal., for plaintiff in error.

Ambrose Gherini and Brewster F. Ames, both of San Francisco, Cal., for defendant in error.

Before MORROW and HUNT, Circuit Judges, and BEAN, District Judge.

BEAN, District Judge. This is an action commenced in the Northern district of California to recover damages for breach of contract. The plaintiff is a New York corporation, doing business in San Francisco; the defendant is a corporation organized and existing under the laws of Russia, and doing business at Vladivostok.

In August, 1920, the plaintiff sold to the defendant a large quantity of merchandise, to be, and which was, shipped to it at Vladivostok, draft with bill of lading attached. The draft was not paid upon presentation, and it was thereupon agreed between the parties that the plaintiff should retake and ship the goods out of Siberia and resell them, charging the defendant with any loss which it might thereby sustain, which defendant agreed to pay; that pursuant to this arrangement the goods were shipped out of Russia and sold by the plaintiff in San Francisco for the best price obtainable, at a loss of some fifty-six odd thousand dollars, which defendant has neglected to pay, and which plaintiff seeks to recover in this action.

The service of summons was made in the city of San Francisco upon Nicholas N. Ivanoff and Vasiliy A. Haieff, "as managing agents of the defendant." The defendant, appearing specially, moved to quash the service and dismiss the action, on the ground that the service was not sufficient to confer jurisdiction of the person of the defendant.

Accompanying the motion and in support thereof are the affidavits of Ivanoff and Haieff, each of whom says that he is a resident of Russia and permanently domiciled therein; that he was not at the

time of the service of the summons upon him the managing or business agent, cashier, or secretary, or an officer or agent of the defendant authorized by it to receive or accept service of summons; that defendant never has had an office or place of business in California, and has never carried on, conducted, or transacted any business therein; that the contract referred to in the complaint was neither entered into, made, or to be performed, nor was it broken, in the state of California, nor in the United States; that at the time of the service he was temporarily and casually present in California, and not for the purpose of transacting any business on behalf of the defendant, except as stated.

Ivanoff says that he is temporarily residing in New York; that he arrived in San Francisco on April 27, 1921, subsequent to all of the alleged happenings referred to in the complaint, and called at the office of Mr. Moore, the president of plaintiff corporation, to ascertain from him upon what terms the controversy existing between the plaintiff and defendant could be adjusted, in order that he might make a report on the matter; that the only result of his call was the writing of a letter from plaintiff to defendant at Vladivostok, asking for payment of the damages alleged in the complaint; that he then went to New York, and returned to San Francisco on July 29, 1921, to meet Mr. Haieff and his daughter, to assist them and aid as their interpreter in the matter of placing the daughter in a young ladies' boarding school in California and to accompany Mr. Haieff to New York; that thereafter, and on August 2d and 4th, he, in company with Mr. Haieff, called on Mr. Moore, the president of the plaintiff, at his office in San Francisco, and there interpreted for Mr. Haieff, who could not speak the English language, in a second attempt to ascertain the terms upon which the controversy could be settled and adjusted.

Mr. Haieff says that he came to the United States for the purpose of placing his son and daughter in school and for improving his own health; that on August 2 and 4, 1921, he called on Mr. Moore, the president of the plaintiff, at his office in San Francisco, accompanied by Mr. Ivanoff, who interpreted for him, to ascertain the terms upon which the controversy could be settled, in order that he might make a report of the matter.

From the affidavit of Mr. Moore, the president of the plaintiff, in its behalf, it appears that defendant is doing business in the United States and Canada, with an office in New York; that for three years it was a customer of the plaintiff, purchasing from it large quantities of merchandise; that in April, 1921, when Mr. Ivanoff called upon him, he presented letters and credentials showing that defendant maintained an office in New York City, and that Mr. Ivanoff was the attorney in fact and representative of the defendant in the United States and Canada, authorized to conduct and attend to all kinds of business for it; that Ivanoff stated that he was instructed to settle the controversy about the goods shipped to Vladivostok and in controversy in this action, and that he represented the defendant in the United States and Canada, and was especially authorized and in-

structed to settle such dispute; that no result was effected, and Ivanoff returned to New York; that about the 1st of August, 1921, Ivanoff again appeared in plaintiff's place of business, and stated that he had come to San Francisco with Mr. Haieff, the principal owner and the most important factor in defendant's organization, and who had come to San Francisco for the purpose of adjusting the differences between the two concerns and desired to arrange a conference for that purpose; that the conference was held on the following day, when Ivanoff explained that Haieff spoke no English; that Haieff thereupon stated to the affiant, through Ivanoff as interpreter, that his principal business in San Francisco was to effect such adjustment of the differences between the two companies as would result in the defendant buying large quantities of merchandise from the plaintiff; that the conference was not completed on that day, but continued on the day following, when Haieff stated that he was a director of the defendant and its affiliated concerns, and was the person who directed the affairs thereof; that the differences between the two companies were discussed, but no agreement or settlement reached, and after the close of the negotiations this action was commenced, and service of summons made upon Ivanoff and Haieff.

There is also an affidavit in behalf of the plaintiff by one Garrissere, to the effect that in August, 1920, the defendant purchased of the corporation represented by him a quantity of goods to be shipped to the Orient; that Ivanoff acted in such matter for the defendant company, and the goods were paid for by a draft drawn by Ivanoff on a New York bank.

It does not appear that either of the parties upon whom service was made participated in any way in the making of the contract in question, or the transactions out of which it arose, or had anything to do therewith other than as above recited; nor does it appear that the defendant had, at the time of the service of summons upon Ivanoff and Haieff, or at any time, an office or place of business in California, or carried on or conducted any business therein, and apparently the transaction in question was the only one pending between the parties. Upon these facts the court below granted the motion to quash the service, dismissed the action, and the plaintiff brings the case here on writ of error.

[1] The general rule is that, to support the jurisdiction of a court of the United States to render a personal judgment against a foreign corporation, it is essential, in the absence of consent, that the corporation was, at the time of the service of process, doing business within the district in such a manner and to such an extent as to warrant the inference that through its agent it was found there, and service must be made upon some agent so far representing the corporation that he may be held in law as an agent to receive process on behalf of his principal. People's Tobacco Co. v. Am. Tobacco Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Toledo v. Hill, 244 U. S. 49, 37 Sup. Ct. 591, 61 L. Ed. 982; Phila. & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710; St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. 218, 33 Sup.

Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; International Harvester Co. v. Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479; Green v. C., B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916; St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Chinn v. Foster-Milburn Co. (D. C.) 195 Fed. 158; Michigan Aluminum Foundry Co. v. Aluminum Castings Co. (C. C.) 190 Fed. 879; Ladd Metals Co. v. American Mining Co. (C. C.) 152 Fed. 1008; Frawley, Bundy & Wilcox v. Pennsylvania Casualty Co. (C. C.) 124 Fed. 259.

[2] What constitutes such a doing business as will subject the corporation to service of process depends, of course, upon the facts in each particular case; but it must be something more substantial than a mere single or isolated transaction, such as attempting to effect the settlement of a matter connected with a contract made in the jurisdiction in which the foreign corporation resides and has its principal place of business, and calling for neither a place of business nor a local agent in the local jurisdiction. The mere presence of a representative of a foreign corporation for the purpose of adjusting such a controversy is not enough. Loudon Machinery Co. v. American Malleable Iron Co. (C. C.) 127 Fed. 1009; Wilkins v. Queen City Savings Bank & Trust Co. (C. C.) 154 Fed. 173. As stated by this court in Doe v. Springfield Boiler & Mfg. Co., 104 Fed. 684, 44 C. C. A. 128, in construing the statute under which service was attempted in this case:

"The general consensus of opinion is that the corporation must transact within the state some substantial part of its ordinary business by its officers or agents appointed and selected for that purpose. and that the transaction of an isolated business act is not the carrying on or doing business in a state," and the party upon whom service is made must be something more than one "who might incidentally or occasionally transact some business" for the corporation.

[3] The facts here fall far short of these requirements. The contract upon which the action is based was not made or to be performed within the jurisdiction of the lower court. The defendant had no office or place of business in the district, and no agent representing it there. It was not doing business there within the meaning of the rule, nor did the persons upon whom service was made so far represent the corporation as to warrant the inference that through them it was found there. They may have been authorized to settle the matter in dispute between the plaintiff and the defendant, but they were not representatives of the corporation in California in any general sense, nor did it thereby surrender or subject itself to the jurisdiction of the local courts.

In Premo Specialty Mfg. Co. v. Jersey-Creme Co., 200 Fed. 352, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015, the contract sued on was made and to be performed in the district in which the action was begun. The service was had on the secretary and treasurer of the defendant while in the district on business connected with the performance of such contract. The court held that upon the showing made the defendant was in fact doing business in the district, and

as a consequence that service of process on defendant's secretary and treasurer while in the district on business for his principal concerned with the contract at the time the cause of action arose gave the court jurisdiction of the defendant. In this case, as already stated, the contract sued on was made and to be performed at Vladivostok, and not in California. Neither of the persons upon whom service was made were officers or representatives of the defendant in any capacity, except that Ivanoff was its general agent in the United States and Canada, with an office in New York—a very different state of facts from that presented in the Premo Case.

The judgment is affirmed.